UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TYREESE MOORE #779951,

    Plaintiff,                                               Hon. Robert J. Jonker

v.                                                               Case No. 1:22-cv-279

UNKNOWN GOULET, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

This matter is before me on Defendants' Motion for Summary Judgment on the Basis of Exhaustion. (ECF No. 18.) Plaintiff has filed a response. (ECF No. 21.) Defendants elected to not reply. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be **DENIED**.

**I. Background**

Plaintiff, a prisoner currently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility (LRF), has sued several Corrections Officers pursuant to 42 U.S.C. § 1983 based on events that occurred at LRF between August and October 2021. Plaintiff alleges that on August 17, 2021, he was housed on the Dublin Unit on the transition wing at LRF. (ECF No. 1 at PageID.4.) He claims that from that date until October of 2021, he requested cleaning supplies but was denied supplies by all Defendants. (*Id.*) Plaintiff claims that the denial of cleaning supplies forced him to live in "close confines to human waste" when other inmates flooded their cells." (*Id.*)

Plaintiff alleges that on October 6, 2021, he requested cleaning supplies from all Defendants, but his request was denied. (*Id.* at PageID.5.) Plaintiff alleges that two days later, an

1

inmate in cell 93 flooded his cell, and Plaintiff was "forced to sit in a flooded cell with feces and urine floating on the floor." (*Id.* at PageID.5–6.) That same day, an inmate in cell 78, which was right next to Plaintiff's cell, flooded the toilet in his cell. (*Id.*) Plaintiff alleges that feces and urine began to flow under his cell door. (*Id.* at PageID.6.) Although Plaintiff requested cleaning supplies, all Defendants denied his request. (*Id.*)

On October 9, 2021, Plaintiff asked Defendants Jimmerson and Goulet for cleaning supplies, but they denied his request. (*Id.*) That same day, cell 78 flooded again, causing feces and urine to flow under Plaintiff's cell door. Plaintiff requested cleaning supplies, but Defendant Hack denied his request. (*Id.*) Plaintiff claims that a porter came to clean the water and waste from cell 78 but that no porter was sent to clean his cell. (*Id.*) Plaintiff alleges that on the same day, his eye became infected as a result of the unsanitary conditions to which he was exposed. (*Id.*) Plaintiff went to healthcare for treatment. Three days later, on October 12, 2021, "Plaintiff's eye began to swell and hurt so he went to healthcare w[h]ere he was treated or at least comforted for the moment." (*Id.* at PageID.7.)

Plaintiff alleges that another inmate flooded his cell on October 15, 2021, causing feces and urine to come into Plaintiff's cell. Plaintiff's request for cleaning supplies was denied by all Defendants. (*Id.*) Plaintiff was finally allowed to clean his cell on October 20, 2021, after two months of being denied cleaning supplies. (*Id.*)

Plaintiff's Eighth Amendment claims against all Defendants remain in this case. (ECF No. 6 at PageID.78.) Defendants move for summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies before filing this action.

## II. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### III. Discussion

Pursuant to 42 U.S.C. § 1997e(a), a prisoner must exhaust all available administrative remedies before filing a lawsuit with respect to prison conditions under 42 U.S.C. § 1983. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA," which the defendant bears the burden of establishing. *Id*. With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion," defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 sets forth the applicable grievance procedure for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue is believed to fall within the jurisdiction of Internal Affairs." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ Q (effective 03/18/2019). If this attempt is unsuccessful (or is inapplicable), the prisoner may submit a Step I grievance. *Id.* The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* The issues asserted in a grievance "should be stated briefly but concisely," and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ DD. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ HH. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

In support of their motion, Defendants submit a Step III Grievance Report showing that Plaintiff did not exhaust any grievance through Step III of the MDOC's grievance process during the relevant period. (ECF No. 19-3.) In fact, Plaintiff did not fully exhaust a grievance. On October 12, 2021, Plaintiff filed a Step I grievance concerning denial of cleaning supplies. (ECF No. 1-1 at PageID.13.) In explaining his attempts to resolve the issue prior to filing a grievance, Plaintiff said that he spoke to various unit officers and "also brought this issue to Dublin Unit's Block Representatives." (*Id.*) Plaintiff identified the issue as follows:

> Since being released from segregation approximately August 17, 2021 and placed in Dublin Unit, on Transition Wing I've been denied clean up, cleaning products, materials or afforded to empty trash container daily. I assert that I'm being subjected to unsanitary living conditions. I declare and assert due to the filing of this grievance I fer for the safety and security of myself from staff retaliation and/or administrative retaliatory transfer!

(*Id.*) On October 14, 2021, Grievance Coordinator (GC) T. Pipkins rejected the grievance as follows:

> A grievant may not grieve the content of policy or procedure except as it was specifically applied to the grievant. If a CFA prisoner has a concern with the content of a policy or procedure, s/he may direct comments to the Warden's Forum as provided in PD 04.01.150 "Prisoner Housing Unit Representatives/Warden's Forum."

5

(*Id.* at PageID.14.) GC Pipkins also included an MDOC Notice to Prisoners Receiving a Grievance Rejection, which recited the reasons for rejections listed in Policy Directive 03.02.130 at Paragraph J, with the eighth reason, "[t]he prisoner is grieving content of the policy or procedure except as it was specifically applied to the grievant," circled. (ECF No. 21-2 at PageID.172.) The notice also warned the recipient that "[i]f you continue to file grievances that are rejected, you may be placed on 'Modified Access.'" (*Id.*) In his complaint, Plaintiff alleged his grievance was rejected because it "had to be raised via prisoner unit representative at the Warden's forum which plaintiff did." (ECF No. 1 at PageID.3.) Plaintiff also attached an unsworn affidavit from Dublin Unit Block Representative Little and an affidavit with an attestation under 28 U.S.C. § 1746 from Dublin Unit Block Representative Lewis, stating that they raised the issue with housing unit staff.

Defendants contend that Plaintiff's claims are subject to dismissal for failure to exhaust for two reasons. First, they contend that, in addition to being non-grievable, Plaintiff's grievance *could have* been rejected as untimely. Defendants postulate that if Plaintiff had appealed the grievance through the subsequent steps of the process, untimeliness might have been added as an additional basis for rejection. Second, Defendants contend that Plaintiff failed properly to present his issue through the Warden's Forum process. Defendants contend that neither the Little affidavit nor the Lewis declaration establish proper exhaustion. They point out that Little's affidavit is undated, not notarized, and lacks an attestation that complies with 28 U.S.C. § 1746. They further contend that neither Little's affidavit nor Lewis's declaration establish that the issue was presented in any of the monthly Warden's Forum meetings, and that Lewis's declaration is dated October 15, 2021, which is three days before the Step I grievance rejection instructing Plaintiff to submit his claim through the Warden's Forum process. Finally, Defendants contend that minutes from Warden's

6

Forum meetings held from August to December show that the issue was not presented to the Warden during that time. (ECF No. 19 at PageID.122–23.)

I begin with Defendants' second ground. Judges in this district have considered and rejected exhaustion motions presenting substantially the same factual scenario and argument. For example, in *Lopp v. Washington*, No. 1:19-cv-540, 2021 WL 3033266 (W.D. Mich. July 19, 2021), the plaintiff submitted a grievance alleging that the defendants improperly denied his request for a special menu accommodation. The grievance was rejected as non-grievable, but the respondent encouraged the plaintiff to present the issue to the Warden's Forum. The court rejected the argument that the plaintiff failed to exhaust his available remedies because he did not present his claims to the Warden's Forum. It observed that while the Warden's Forum is the proper forum for raising an issue concerning the content of a prison policy or procedure, it is not an appropriate vehicle for a prisoner to argue that his rights were violated. *Id.* at *1. The court found that the plaintiff's claims did not concern the content of a policy or procedure, and thus concluded that "the Warden's Forum was not the proper venue" for the plaintiff to present his claims. *Id.* at *2. Both the magistrate judge and the district court in *Regains v. Horrocks*, No. 2:21-cv-72, 2022 WL 4473493 (W.D. Mich. Mar. 30, 2022), *report and recommendation adopted*, 2022 WL 4464661 (W.D. Mich. Sept. 26, 2022), followed *Lopp* in rejecting the MDOC defendants' exhaustion motion. There, although the plaintiff's grievance was rejected as non-grievable and the grievance rejection advised the plaintiff that he could present his concerns about the content of a policy directive to the Warden's Forum, the plaintiff's claim did not concern the content of a policy or procedure. Instead, he claimed that the defendant retaliated against him, thereby violating his constitutional rights. Thus, the Warden's Forum was not a proper venue for exhaustion. 2022 WL 4473493, at *5.

Here, as in *Lopp* and *Regains*, Plaintiff was complaining about the violation of his constitutional rights not to be subjected to inhumane and unsanitary conditions as a result of being denied cleaning supplies. Nothing in his grievance, which is set forth above in its entirety, suggests that it had anything to do with the content of a policy or procedure. Therefore, the Warden's Forum was not a proper venue for Plaintiff to exhaust his claims.

Defendants' first ground—that Plaintiff was required to exhaust his claim through subsequent steps of the grievance process—lacks merit. This argument ignores Sixth Circuit caselaw holding that a prisoner cannot be required to exhaust administrative remedies regarding non-grievable issues. *See Owens v. Keeling*, 461 F.3d 763, 769 (6th Cir. 2006); *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004) (holding that an inmate "cannot be required to exhaust administrative remedies regarding non-grievable issues"). "The non-grievability of [an issue] through the grievance process makes that remedy unavailable under the PLRA, and thus [the prisoner] does not have to pursue that remedy to exhaust his claim." *Owens*, 461 F.3d at 769 (citing *Wyatt v. Leonard*, 193 F.3d 876, 878 (6th Cir. 1999), and *Rancher v. Franklin Cnty.*, 122 F. App'x 240, 242 (6th Cir. 2005)). The *Lopp* court applied this principle to conclude that the plaintiff was not required to pursue the grievance process once his grievance was rejected as non-grievable. 2021 WL 3033266, at *2; *see also Regains*, 2022 WL 4464661, at *1 ("District courts have applied this holding in cases not only where the plaintiff pursues a grievance through Step III, as in *Lopp*, but also where the plaintiff does not appeal through Step III the finding that a complaint was non-grievable."). As the magistrate judge put it in *Regains*, "the Step I Respondent freed [Plaintiff] of his duty to further pursue the grievance process when the Respondent rejected [Plaintiff's] grievance . . . as non-grievable." 2022 WL 4473493, at *5; *see also Valdez v. Bray*, No. 2:21-cv-58, 2022 WL 3587883, at *4 (W.D. Mich. July 22, 2022), *report and recommendation adopted*,

2022 WL 3586244 (W.D. Mich. Aug. 22, 2022) (stating that "for the MDOC to instruct a prisoner that his claims fall outside of its grievance procedure and then assert that the claims are barred from litigation because the prisoner did not exhaust the same procedure belies logic").

Accordingly, Plaintiff exhausted his claims against Defendants.

## CONCLUSION

For the foregoing reasons, I recommend that the Court **deny** Defendants' motion for summary judgment. (ECF No. 18.)

Dated: December 9, 2022                                         /s/ Sally J. Berens
                                                                SALLY J. BERENS
                                                                U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).