UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TYREESE MOORE #779951,

    Plaintiff,

v.

UNKNOWN GOULET, et al.,

    Defendants.

_____/

Hon. Robert J. Jonker

Case No. 1:22-cv-279

**REPORT AND RECOMMENDATION**

Presently before me is Defendants' Motion for Summary Judgment and Qualified Immunity (ECF No. 42) seeking summary judgment on various grounds on Plaintiff's claims against all Defendants. The motion is fully briefed and ready for decision.

Pursuant to 28 U.S.C. § 636(1)(B), I recommend that the motion be **GRANTED** and that Plaintiff's claims be **dismissed with prejudice.**

### I.  Background

Plaintiff is a state prisoner currently incarcerated with the Michigan Department of Corrections at the Earnest C. Brooks Correctional Facility (LRF). Plaintiff has sued LRF Corrections Officers (CO) Anthony Goulet, Andrew Bradfield, Jason Hack, Matthew Opperman, Paul Bush, Andrew Strickler, Alex Jimerson, and James Butcher pursuant to 42 U.S.C. § 1983, alleging that they violated his Eighth Amendment rights by denying him supplies to clean his cell after it became flooded with toilet water that came from other prisoners' cells. Plaintiff's claim concerns four flooding incidents.

From August 17, 2021, through October 2021, Plaintiff was housed in the Dublin Unit on the transition wing at LRF. (ECF No. 1 at PageID.4.) The first incident occurred on October 8,

2021, when a prisoner in cell 93 flooded the toilet in his cell, causing toilet water to come into Plaintiff's cell. (*Id.* at PageID.5–6.) Plaintiff alleged in his complaint that feces and urine came into his cell and that he was forced to sit in his cell with feces and urine floating on the floor. (*Id.*) During his deposition, however, Plaintiff testified that while dirty toilet water came into his cell, he did not observe pieces of fecal matter in the water. (ECF No. 43-2 at PageID.315–16.) Plaintiff testified that the amount of water was "not that much[,] . . . probably eight ounces." He estimated that the water traveled less than one foot into his cell and that napkins would have sufficed to wipe it up, but he used paper towels or a rag instead. (*Id.* at PageID.323–24.) The water naturally flowed from cell 93 into Plaintiff's cell. (*Id.* at PageID.317.) Plaintiff said that the water left a smell at first, but it soon dissipated. (*Id.* at PageID.325–26.) Plaintiff claims that he asked LRF staff for cleaning supplies, but he could not recall if he asked any of the named Defendants for supplies. (*Id.* at PageID.325.)

Plaintiff claims that later that same day, the prisoner in cell 78 flooded his toilet, causing water to come into Plaintiff's cell. (ECF No. 1 at PageID.5–6.) He alleges that feces and urine began to flow under his cell door. (*Id.* at PageID.6.) Cell 78 was next to Plaintiff's cell. (ECF No. 43-2 at PageID.328.) This time, Plaintiff's cell was "really, really flooded." (*Id.*) Plaintiff claims that the water was about an inch deep and covered the entire floor. (*Id.* at PageID.330.) The water contained feces and toilet paper and smelled like feces and urine. (*Id.* at PageID.331.) The water remained in Plaintiff's cell for about an hour. Plaintiff and his bunkie used their bed sheets to clean up the water. (*Id.* at PageID.332–33.) Plaintiff asked Defendant CO Hack for cleaning supplies after he dried his cell floor, but Hack did not provide Plaintiff any supplies. (*Id.* at PageID.333–34.) Plaintiff was allowed to dispose of his dirty linens later that evening but had an extra set of clean linens to use that night. (*Id.*) The following morning, October 9, while returning from yard

2

break, Plaintiff asked COs Jimmerson and Goulet for cleaning supplies, but they denied his request because they did not have cleaning supplies. (*Id.* at PageID.336–37, 339.)

Later in the day on October 9, the prisoner in cell 78 flooded his cell again, causing toilet water containing feces and urine to flow under Plaintiff's cell door. (ECF No. 1 at PageID.6.) Plaintiff claims that the amount of water was about the same as the previous incident involving cell 78. (ECF No. 43-2 at PageID.339–40.) Once again, Plaintiff and his bunkie used bedsheets and towels to clean up the water. (*Id.* at PageID.341.) Plaintiff claims that he asked CO Hack for cleaning supplies, but Hack denied him supplies. (*Id.* at PageID.343.) The cell was dry by about 10:00 that evening, and Plaintiff slept on clean sheets that night. (*Id.*)

On October 15, 2021, a new prisoner in cell 78 flooded his cell, again causing more toilet water to enter Plaintiff's cell. Once again, Plaintiff and his bunkie used sheets and towels to clean up the toilet water. (ECF No. 43-2 at PageID.348.) Plaintiff alleges that he asked the second shift officers, including Opperman, "Butch," and Hack, for cleaning supplies but they denied his request. (*Id.* at PageID.349–50.) Plaintiff claims that he was finally provided cleaning supplies on October 20, 2021. (ECF No. 1 at PgeID.7; ECF No. 43-2 at PageID.353.)

Plaintiff alleged in his complaint that his eye became infected on October 9, 2021, as a result of the unsanitary conditions (toilet water) to which he was exposed. (ECF No. 1 at PageID.6.) He further alleges that on October 12, 2021, his eye began to swell and hurt, so he went to healthcare for treatment. (*Id.*) Plaintiff's allegations, however, are at odds with his medical records, which show that on October 7, 2021—before any of the flooding incidents occurred—Plaintiff notified healthcare that his right eyelid had been swollen, red, and irritated for three days. (ECF No. 43-3 at PageID.401.) Plaintiff was seen by healthcare on October 9, 2021, where he reported that his eye had been swollen for five days. (*Id.* at PageID.392.)

3

## II. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III. Discussion

As noted, Defendants raise several grounds for summary judgment. First, Defendants Bradfield, Opperman, Bush, Strickler, and Butcher contend that Plaintiff fails to establish their personal involvement in the claimed constitutional violations because he simply lumped them together with all Defendants without alleging that they did anything to violate Plaintiff's rights. Defendants Goulet, Hack, and Jimmerson do not contest their personal involvement. Second, all Defendants contend that Plaintiff fails to establish both the objective and the subjective components of his Eighth Amendment claim. Finally, Defendants contend that they are entitled to qualified immunity.

### A. Applicable Standard

Plaintiff's claim that Defendants failed to provide him supplies to clean his cell following the flooding events described above implicates the Eighth Amendment, which imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes*

*v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Consequently, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions-of-confinement claims). The deliberate-indifference standard thus includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge

5

of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### B. Personal Involvement

It is well established in the Sixth Circuit that to state a cognizable claim under Section 1983, a plaintiff must allege personal involvement by each of the named defendants. *See Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995). A plaintiff must present evidence of the defendant's involvement in the alleged constitutional deprivation to defeat a summary judgment motion. *Bennett v. Schroeder*, 99 F. App'x 707, 713 (6th Cir. 2004); *see also Lentz v. Anderson*, 888 F. Supp. 847, 850 (N.D. Ohio 1995) ("Because there is no evidence that Governor Voinovich, Department of Rehabilitation and Correction Director Wilkinson, OPI Director Anderson, and OPI Manager Mustard were personally involved in the prison's decision-making process which led to plaintiff's allegations of cruel and unusual punishment, they will be dismissed from any § 1983 liability.").

Defendant Bradfield has submitted an affidavit in which he states that he does not recall the October 2021 flooding events that Plaintiff describes in his complaint and that he has never "outright 'denied'" prisoners cleaning products. (ECF No. 43-4 at PageID.407.) Rather, he explains, there are times that cleaning products are not available upon request by prisoners, and access to such supplies may be further limited due to prisoners stealing or hiding cleaning products in their cells. (*Id.*) In his deposition, Plaintiff stated that he did not recall asking Defendant Bradfield for cleaning supplies in relation to the October 8 and 9, 2021 flooding events, and had no idea whether Bradfield had even worked those days. (ECF No. 43-2 at PageID.356–57.)

Because Plaintiff has presented no admissible evidence that Defendant Bradfield denied him cleaning supplies for any of the flooding events, Defendant Bradfield is entitled to summary judgment based on lack of personal involvement in the alleged violation.

Defendant Opperman has submitted an affidavit also stating that he does not remember the flooding events alleged in the complaint and that he has never "outright 'denied'" prisoners cleaning supplies. (ECF No. 43-5 at PageID.411.) Like Defendant Bradfield, Defendant Opperman confirms that cleaning supplies are not always available and that their availability may be limited due to prisoner theft or concealment. (*Id.*) Defendant Opperman notes that, while Plaintiff testified during his deposition that he asked Defendant Opperman for cleaning supplies at some point between October 6 and 20, 2021, he was unable to give any specifics about when he made the request. (ECF No. 42 at PageID.270 (citing ECF No. 43-2 at PageID.359).) Earlier in his deposition, however, Plaintiff testified that in connection with the October 15 flooding event, he asked the second shift officers—Opperman, "Butch[er]", and Hack—for cleaning supplies, but they denied his request. (ECF No. 43-2 at 349–50.) Although Plaintiff's testimony was far from rich in detail, I find it sufficient to create a genuine issue of material fact with regard to Defendant Opperman's involvement.

I reach the same conclusion as to Defendant Butcher, whose affidavit mimics Bradfield's and Opperman's affidavits. (ECF No. 43-8.) While Defendant Butcher is correct that Plaintiff testified that he did not remember a specific date when he asked Defendant Butcher for cleaning supplies (ECF No. 43-2 at PageID.365), as noted with regard to Defendant Opperman, Plaintiff also testified that he asked the second shift officers, including Butcher, for cleaning supplies in relation to the October 15 incident. (*Id.* at PageID.349.)

Defendant Bush provides a slightly different affidavit. While he confirms that he has never "outright 'denied'" prisoners cleaning supplies, he states that he did not work on October 8, 2021,

7

and did not work in Dublin Housing Unit on October 9, 2021. (ECF No. 43-6 at PageID.415.) In contrast to Defendants Opperman and Butcher, Plaintiff did not testify at all during his deposition that he asked Defendant Bush for cleaning supplies in connection with a specific flooding incident or that Defendant Bush denied such request. Plaintiff fails to present evidence refuting Defendant Bush's claim that he did not work in Dublin Unit on October 8 and 9, 2021, and he has not provided any admissible evidence that Defendant Bush was personally involved the alleged violation. Therefore, Defendant Bush is entitled to summary judgment on this basis.

Last, Defendant Strickler states in his declaration that he recalls the October 8 and 9, 2021 flooding events and recalls prisoners being upset about something, but he did not know what. He further states that, like the other Defendants, he has never "outright 'denied'" prisoners cleaning supplies. (ECF No. 43-7 at PageID.419.) While Plaintiff testified that he "occasionally . . . ask[ed] first shift officers" why they did not get cleaning supplies out (ECF No. 43-2 at PageID.363–64), Plaintiff never testified that he specifically asked Defendant Strickler for cleaning supplies in connection with one of the flooding events and that Defendant Strickler denied his request. Therefore, I conclude that Plaintiff fails to present sufficient evidence to create a genuine issue regarding Defendant Strickler's personal involvement.

In sum, I recommend that the Court grant summary judgment to Defendants Bradfield, Bush, and Strickler on the ground of lack of personal involvement and conclude that Plaintiff has presented sufficient evidence to show personal involvement by Defendants Opperman and Butcher. Plaintiff's arguments in his response about what the unit Dublin Unit logbooks would show and about discovery being incomplete are immaterial at this point and provide no basis for denying summary judgment to Defendants Bradfield, Bush and Strickler. (ECF No. 44 at PageID.439–40.) Plaintiff was afforded the opportunity to conduct discovery in this case, and he did so, by serving discovery requests on Defendants. (ECF Nos. 33 and 34.) Plaintiff never

objected to Defendants' responses and did not file a motion to compel prior to the discovery completion date. Plaintiff has offered no evidence in response to Defendants' motion, and his speculation about extra-record evidence is insufficient to create a genuine issue of material fact.

### C. Constitutional Violation

Defendants also contend that Plaintiff fails to establish both the objective and subjective components of his claim. In the context of Eighth Amendment claims complaining of exposure to raw sewage or overflowed toilet water, courts within the Sixth Circuit have held that, absent resulting physical injury, a plaintiff's allegations of exposure to such conditions fail to satisfy the objective component of an Eighth Amendment claim. *See Still v. Davis*, No. 1:16-cv-640, 2018 WL 1202827, at *6 (S.D. Ohio Mar. 8, 2018), *report and recommendation adopted*, 2018 WL 2943227 (S.D. Ohio June 12, 2018) (noting that in cases involving exposure to raw feces, courts have found no Eighth Amendment violation where the duration of exposure is short and no injury occurred); *Keel v. Davidson Cnty. Sheriff's Office*, No. 3:13-1145, 2015 WL 799724, at *3 (M.D. Tenn. Feb. 25, 2015) ("Multiple courts have found that exposure to leaking sewage in a prison cell with no accompanying physical harm is insufficient to satisfy the objective component of a constitutional violation.") (citing *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (prisoner's exposure to an overflowed toilet in his cell for four days insufficient to support an Eighth Amendment claim); *Cross v. Bradley Cnty. Jail*, No. 1:08-cv-123, 2009 WL 2043884, at *5 (E.D. Tenn. July 2, 2009) (plaintiffs' allegations of exposure to lingering odor of waste did not allege "a long-term sanitary issue" that posed a substantial risk of serious harm under *Farmer*); and *Antonelli v. Walters*, No. 07-219, 2009 WL 921103, at *20 (E.D. Ky. Mar. 31, 2009) (dismissal of prisoner's allegation of waking in the mornings to raw sewage in his cell was appropriate based on lack of physical harm or detriment resulting from the exposure)); *Goforth v. Sumner Cnty.*, No. 3:13-cv-417, 2013 WL 1943020, at *3 (M.D. Tenn. May 9, 2013) (plaintiff's allegations of being

forced to endure the smell and unsanitary presence of human feces smeared on his cell door for a period of 48 hours insufficient to support an Eighth Amendment claim because the plaintiff failed to allege that such exposure resulted in physical harm); *cf. Catanzaro v. Michigan Dep't of Corrs.*, No. 08-11173, 2009 WL 2154921, at *4 (E.D. Mich. July 14, 2009) (plaintiffs' allegations about unsanitary prison conditions failed to demonstrate a likelihood of success on the merits where the plaintiffs failed to show injury from the alleged unconstitutional conditions).

Courts also consider the length of time to which the plaintiff was exposed to the alleged unconstitutional condition. Exposure that amounts to no more than a "temporary inconvenience[]" will not establish that "the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency." *Dellis v. Corrections Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (holding that the plaintiff's claim that he was deprived of a lower bunk, was subjected to a flooded cell, and was deprived of a working toilet for a brief period of time did not state an Eighth Amendment claim); *see also Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) ("In the absence of evidence that a prisoner suffered a physical injury, the deprivation of a mattress and bedding for a fixed period of time does not violate the Eighth Amendment. Richmond has not presented any evidence of injury resulting from his approximately thirty-hour deprivation of a mattress and bedding.") (internal citations omitted); *Rogers v. Roy*, No. 1:21-cv-140, 2021 WL 1686133, at *7 (W.D. Mich. Apr. 29, 2021) (collecting cases establishing that deprivations amounting to a temporary inconvenience do not violate the Eighth Amendment). In *Perkins v. Bailey*, No. 1:20-cv-1029, 2021 WL 868887 (W.D. Mich. Mar. 9, 2021), for example, the court held that the plaintiff's allegation that he was exposed to black mold for five days did not "demonstrate the existence of a sufficiently serious risk to prisoner health. *Id.* at *9. Similarly, exposure to raw sewage from an overflowing toilet for a short period of time does not give rise to an Eighth Amendment violation. *See Wiley v. Kentucky Dep't of*

*Corrs.*, No. 11-97, 2012 WL 5878678, at *5 (E.D. Ky. Nov. 21, 2012) (holding that the plaintiff's exposure to raw sewage and offensive odors from overflowing toilets for one day was of short duration and did not violate the Eighth Amendment).

Here, Plaintiff fails to establish an Eighth Amendment violation by any Defendant. To begin, each flooding event was of short duration and cleaned up fairly quickly. The first event involved a minimal amount of water (eight ounces), which Plaintiff cleaned up using paper towel or a rag. While the remaining three events involved more substantial amounts of water, Plaintiff and his bunkie were able to clean up the toilet water using their bedsheets and towels. According to Plaintiff's own testimony, his cell was completely dry by 10:00 p.m. following the two larger flooding events on October 8 and 9. (ECF No. 43-2 at PageID.343.) Plaintiff admits that he was given cleaning supplies no later than October 20, 2021.

Finally, although Plaintiff alleged in his complaint that his eye became infected due to the unsanitary conditions he was forced to endure, as noted above, his own medical records show that this allegation is not true. Instead, Plaintiff reported to healthcare that his eye infection began four days before the first flooding event occurred. (ECF No. 43-3 at PageID.401, 392.) Although Plaintiff claims that he spent 11 days in a cell exposed to "TB, AIDS virus, HIV, Hepatitis, and God knows what else," (ECF No. 444 at PageID.441), his speculation is insufficient. While the Court is sympathetic to his complaints regarding the condition of his cell, Plaintiff offers no evidence indicating that he suffered physical injury resulting from exposure to the toilet water. In short, Plaintiff has not shown that he suffered more than a temporary inconvenience, and that does not rise to the level of an Eighth Amendment violation.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's claims.[1]

---

[1] Given Plaintiff's failure to establish the objective component of his claim, I find it unnecessary to address the subjective component.

### D.    Qualified Immunity

Defendants separately raise qualified immunity as a basis for summary judgment. Because qualified immunity is an alternative argument, I find no need to address the issue given the above recommendation that Plaintiff has failed to establish a constitutional violation. *See Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) ("If either step [of the qualified immunity inquiry] is not satisfied, then qualified immunity shields the government officer from civil damages.").

## IV.    Conclusion

In sum, I recommend that the Court **grant** Defendants' motion for summary judgment (ECF No. 42) because Plaintiff fails to establish the requisite personal involvement as to Defendants Bradfield, Bush, and Strickler and fails to establish an Eighth Amendment violation as to all Defendants. Thus, Plaintiff's claims should be **dismissed with prejudice**.

Dated: August 21, 2023                                    /s/ Sally J. Berens
                                                                              SALLY J. BERENS
                                                                              U.S. Magistrate Judge

### NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).